Lincoln Combs – State Bar #025080
**O'STEEN & HARRISON, PLC**
300 W. Clarendon Ave., Suite 400
Phoenix, Arizona  85013-3424
P: (602) 252-8888 F: (602) 274-1209
lcombs@vanosteen.com

J. Gerard Stranch, IV - TN State Bar #023045 *(pro hac vice pending)*
Grayson Wells  - TN State Bar #039658 *(pro hac vice pending)*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
T: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

*Counsel for Plaintiff and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pennie Roller, individually and on behalf of all other similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **AND** |
| Constar Financial Services, LLC, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Pennie Roller ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendant Constar Financial Services ("Defendant" or "Constar"), to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendant. Plaintiff makes the following allegations on information and belief, except as to her own actions, which are made on personal knowledge, the investigation of counsel, and the facts that are a matter of public record.

**INTRODUCTION**

1.      This class action arises out of the recent targeted ransomware attack and data breach ("Data Breach") on Defendant's network that resulted in unauthorized access and acquisition of Plaintiff's highly sensitive data. As a result of the Data Breach, Class Members suffered ascertainable losses in the form of the failure to receive agreed-upon compensation, benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack, emotional distress, and the present risk of imminent harm caused by the compromise of their sensitive personal information, including their financial information and social security numbers.

2.      Upon information and belief, the specific information compromised in the Data Breach includes, but is not limited to, personally identifiable information ("PII"), such as full names, mailing address, e-mail address, Social Security number, telephone number, and information about financial status, such as employment, income, monthly expenses, and assets.[1]

3.      Upon information and belief, up to and through July 2024, Defendant obtained the PII of Plaintiff and Class Members and stored that PII, unencrypted, in an Internet-accessible environment on Defendant's network, from which unauthorized actors used an extraction tool to retrieve sensitive PII belonging to Plaintiff and Class Members.

4.      Plaintiff's and Class Members' PII—which were entrusted to Defendant, their officials, and agents—were compromised and unlawfully accessed due to the Data Breach.

5.      Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Plaintiff's and Class Members' PII that Defendant collected and maintained.

6.      Defendant maintained the PII in a negligent and/or reckless manner. In

---

[1] https://www.empereon-constar.com/privacy-notice/

particular, the PII was maintained on Defendant's computer system and network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' PII was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition.

7.    In addition, upon information and belief, Defendant and its employees failed to properly monitor the computer network, IT systems, and integrated services that housed Plaintiff's and Class Members' PII, including either through the lack of sufficient centralized monitoring and alerting systems or through the use of third-party managed services providers, such that Defendant failed to timely recognize malicious activity on its information systems. The notices Defendant sent out are silent as to when the breach Data Breach began or how long the hackers were inside its systems, strongly suggesting that Defendant even now does not know the timeline of the Data Breach.

8.    Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct because the PII that Defendant collected and maintained is now in the hands of malicious cybercriminals. The risks to Plaintiff and Class Members will remain for their respective lifetimes.

9.    Defendant failed to provide timely, accurate, and adequate notice to Plaintiff and Class Members. Plaintiff's and Class Members' knowledge about the PII Defendant lost, as well as precisely what type of information was unencrypted and in the possession of unknown third parties, was unreasonably delayed by Defendant's failure to warn impacted persons immediately upon learning of the Data Breach.

10.    Indeed, armed with the PII accessed in the Data Breach, data thieves can commit a variety of crimes including opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to target other phishing and hacking intrusions using Class Members' information to obtain government benefits, filing

fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

11.     As a result of the Data Breach, Plaintiff and Class Members have been exposed to a present, heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now closely monitor their financial accounts to guard against identity theft for the rest of their lives.

12.     Plaintiff and Class Members may also incur out-of-pocket costs for purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

13.     By her Complaint, Plaintiff seeks to remedy these harms on behalf of themselves and all similarly situated individuals who have suffered harm due to Defendant's failures.

14.     Accordingly, Plaintiff brings claims on behalf of herself and the Class for: (i) negligence, (ii) breach of contract, (iii) invasion of privacy, (iv) unjust enrichment, and (iv) declaratory judgment and injunctive relief. Through these claims, Plaintiff seeks, *inter alia*, damages and injunctive relief, including improvements to Defendant's data security systems and integrated services, future annual audits, and adequate credit monitoring services.

## PARTIES

15.     Plaintiff is a natural person and citizen of South Carolina.

16.     Defendant is an Arizona corporation with its principal place of business located in Pheonix, Maricopa County, Arizona.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members exceeds 100, many

of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

18.     This Court has personal jurisdiction over Defendant because it operates and is headquartered in this District and conducts substantial business in this District.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(l) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendant is based in this District, maintains Plaintiffs' and Class Members' Private Information in this District, and has caused harm to Plaintiffs and Class Members in this District.

## BACKGROUND FACTS

**A.     Defendant's Business**

20.     Defendant, better known as Empereon Constar, is a business process outsourcing company that provides a range of services, including collections recovery, customer care & retention, sales & customer acquisition, back-office support and technical support.[2] Defendant has over 4,000 employees across 10 locations and "over 5 millions [sic] customer connections a year." [3]

21.     On information and belief, Defendant maintains the PII of consumers and employees, including but not limited to their full names, dates of birth, social security numbers, financial and credit-related information, and other information that Defendant may deem necessary to provide its services.

22.     Plaintiff and Class Members directly or indirectly entrusted Defendant with sensitive and confidential PII, which includes information that is static, does not change, and can be used to commit myriad financial crimes.

23.     Because of the highly sensitive and personal nature of the information Defendant acquires, stores, and has access to, Defendant, upon information and belief,

---

[2] https://www.empereon-constar.com/who-we-are/
[3] *Id.*

1  promised to, among other things: keep PII private; comply with industry standards related

2  to data security and PII; inform individuals of their legal duties and comply with all federal

3  and state laws protecting PII; only use and release PII for reasons that relate to medical

4  care and treatment; and provide adequate notice to impacted individuals if their PII is

5  disclosed without authorization.

6      24.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and

7  Class Members' PII, Defendant assumed legal and equitable duties and knew or should

8  have known that it was responsible for protecting Plaintiff's and Class Members' PII from

9  unauthorized disclosure.

10     25.    Plaintiff and Class Members have taken reasonable steps to maintain the

11  confidentiality of their PII.

12     26.    Plaintiff and the Class Members relied on Defendant to implement and

13  follow adequate data security policies and protocols, to keep their PII confidential and

14  securely maintained, to use such PII solely for business purposes, and to prevent the

15  unauthorized disclosures of the PII.

16     27.    Defendant recognizes that it owes duties to protect Plaintiff's and Class

17  Members' PII. For example, in its "Privacy Policy," Defendant promises: "We do not

18  disclose any nonpublic personal information about our customers or former customers to

19  anyone, except as permitted by law."[4]

20  **B.    Defendant Fails to Safeguard Consumer PII**

21     28.    On September 27, 2024, Defendant began notifying victims of the Data

22  Breach, stating in relevant part:

23          On July 22, 2024, we became aware that certain computer
24          systems in our Empereon corporate computer environment
            exhibited evidence of unauthorized access. We promptly took
25          steps to secure our ststems and launched an investigation with
            the assistance of cyber incident response specialists to
26          determine the full nature and scope of the event. We also

27

---

[4] https://www.empereon-constar.com/privacy-notice/

promptly reported the event to federal law enforcement. Through our investigation, we determined that an unauthorized actor had access to an archived data set contained a limited number of files and employee information. Therefore, out of caution, we conducted a comprehensive review of the information within the impacted files to identify the personal information contained therein and to whom that information related. We recently concluded our review. [5]

29.      Upon information and belief, the cyberattack was expressly designed to gain access to private and confidential data of specific individuals, including (among other things) the PII of Plaintiff and the Class Members. Although Defendant's example of data breach letter on the Attorney General of Maine's website does not specifically list the compromised data types,[6] upon information and belief, and according to Defendant's notification letter to Plaintiff Roller, the compromised data includes name, date of birth, and Social Security numbers.[7]

30.      Plaintiff further believes their PII was likely subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals and now occurs in virtually every Data Breach, including in ransomware attacks because malicious actors exfiltrate the sensitive data contained on its target's systems before encrypting those same systems.

31.      Defendant had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' PII from involuntary disclosure to third parties.

32.      Because of the Data Breach, data thieves were able to gain access to Defendant's private systems and were able to compromise, access, and acquire the protected PII of Plaintiff and Class Members.

33.      Defendant had obligations created by contract, industry standards, common law, and its own promises and representations made to Plaintiff and Class Members to

---

[5] Exhibit A, Data Breach Notification Letter to Plaintiff Pennie Roller.
[6] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/f56 257 46-df54-4075-b823-0606fb3a2876.html
[7] Ex. A.

keep their PII confidential and to protect them from unauthorized access and disclosure.

34.    Plaintiff and the Class Members reasonably relied (directly or indirectly) on Defendant's sophistication to keep their sensitive PII confidential; to maintain proper system security; to use this information for business purposes only; and to make only authorized disclosures of their PII.

35.    Plaintiff's and Class Members' unencrypted, unredacted PII was compromised due to Defendant's negligent and/or careless acts and omissions, and due to the utter failure to protect Class Members' PII. Criminal hackers obtained their PII because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The risks to Plaintiff and Class Members will remain for their respective lifetimes.

36.    Although Defendant asserts that the cybercriminals only had access to "an archived data set containing a limited number of files and employee information," at least once source has reported that the hackers "exfiltrated a substantial 800 GB of sensitive data, including SQL databases containing clients' information, employee files, and detailed financial records."[8]

37.    Worryingly, although Defendant has not revealed the source of the attack, the cybercriminals that obtained Plaintiff's and Class Members' PII are reportedly the notorious cybercriminal group "Akira."[9]

38.    Akira is "swiftly becoming one of the fastest-growing ransomware families," believed to be the descendant of another prolific ransomware family, Ryuk ransomware.[10] Akira emerged in March of 2023 and similarly maintains a leak site on the

---

[8] *Ransomware Attack on Empereon Constar: 800GB Data Breach by Akira, Incident Date: July 25, 2024,* https://ransomwareattacks.halcyon.ai/attacks/ransomware-attack-on-empereon-constar-800gb-data-breach-by-akira

[9] *Id.*

[10] Trend Micro Res., *Ransomware Spotlight: Akria*, TREND MICRO (Oct. 5, 2023), https://www.trendmicro.com/vinfo/us/security/news/ransomware-spotlight/ransomware-spotlight -akira.

dark web where it publishes stolen data of victims who do not pay ransoms.[11]

**C.    Defendant was on Notice of the Foreseeable Risk of the Data Breach**

39.    In light of recent high profile data breaches, Defendant knew or should have known, if it was paying any attention, that the electronic records and PII it maintained would be targeted by cybercriminals and ransomware attack groups.

40.    Defendant knew or should have known that these attacks were common and foreseeable.

41.    In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[12] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[13]

42.    Therefore, the increase in such attacks, and the attendant risk of future attacks, was widely known to the public and to companies storing sensitive PII, like Defendant.

**D.    Defendant Fails to Comply with FTC Guidelines**

43.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

44.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they

---

[11] Lawrence Adams, *Meet Akira — A New Ransomware Operation Targeting the Enterprise* (May 7, 2023), https://www.bleepingcomputer.com/news/security/meet-akira-a-new-ransomware-operation-targeting-the-enterprise.

[12] *See* 2021 Data Breach Annual Report (ITRC, Jan. 2022) (available at https://notified.idtheftcenter.org/s/), at 6.

[13] *Id.*

keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies to correct any security problems.[14] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[15]

45.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

46.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

47.     These FTC enforcement actions include actions against private universities like Defendant.

48.     Defendant failed to properly implement basic data security practices.

49.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers and other impacted individuals' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

---

[14] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.
[15] *Id.*

50.    Defendant was at all times fully aware of its obligation to protect the PII. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**E.    Defendant Fails to Comply with Industry Standards**

51.    Several best practices have been identified that at a minimum should be implemented by companies storing sensitive PII like Defendant, including but not limited to educating all employees; requiring strong passwords; implementing multi-layer security, including firewalls, anti-virus and anti-malware software, centralized logging and monitoring systems; implementing encryption techniques, making data unreadable without a key; requiring and enforcing multi-factor authentication; backing up data; and limiting which employees can access sensitive data.

52.    Other best cybersecurity practices that are standard include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

53.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

54.    Defendant furthermore failed to have basic policies in place to require the foregoing safeguards and to prepare for the inevitable attack that did occur, including a sufficient incident response plan and a business continuity and disaster recovery plan that would have allowed Defendant to more seamlessly respond to the Data Breach in a way

that would have allowed it to continue business operations, make payments to customers, quickly and efficiently remove the attacker from its information systems, and allow it to more fully understand the root cause of the Data Breach in a timely manner.

55.    These foregoing frameworks are existing and applicable industry standards, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the Data Breach.

**F.    Defendant's Breach**

56.    Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and website's application flow. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.    failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.    failing to adequately protect PII;

c.    failing to properly monitor their own data security systems for existing intrusions;

d.    failing to utilize centralized monitoring, alerting, and anomaly detection systems to identify malicious activity;

e.    failing to implement appropriate system-level logging to ensure forensics artifacts would be maintained sufficient to identify the root cause of an attack and the full scope of what data was stolen or unauthorizedly accessed;

f.    failing to ensure that their vendors with access to their computer systems and data employed reasonable security procedures;

g.    failing to ensure the confidentiality and integrity of electronic PII it created, received, maintained, and/or transmitted;

h.    failing to implement technical policies and procedures for electronic

information systems that maintain electronic PII to allow access only to those persons or software programs that have been granted access rights;

i.  failing to implement policies and procedures to prevent, detect, contain, and correct security violations;

j.  failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports;

k.  failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PII;

l.  failing to train all members of their workforces effectively on the policies and procedures regarding PII;

m.  failing to render the electronic PII it maintained unusable, unreadable, or indecipherable to unauthorized individuals;

n.  failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTCA;

o.  failing to adhere to industry standards for cybersecurity as discussed above; and,

p.  otherwise breaching their duties and obligations to protect Plaintiff's and Class Members' PII.

57.    Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' PII by allowing cyberthieves to access Defendant's computer systems, which provided unauthorized actors with unsecured and unencrypted PII.

58.    Accordingly, as outlined below, Plaintiff and Class Members now face a present, increased risk of fraud and identity theft. In addition, Plaintiff and the Class Members also lost the benefit of the bargain they made with Defendant, have suffered invasions of their privacy, and have suffered other financial harm, including the

deprivation of the funds they were promised by Defendant.

**G.**     **Data Breaches Cause Disruption and Increased Risk of Fraud and Identity Theft**

59.     Cyberattacks and data breaches at companies like Defendant are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

60.     The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[16]

61.     That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

62.     The FTC recommends that identity theft victims take several steps to protect

---

[16] *See Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO-07-737, U.S. Gov. Accounting Office, (2007) https://www.gao.gov/new.items/d07737.pdf.

their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[17]

63.     Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

64.     Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

65.     Moreover, theft of PII is also gravely serious because PII is an extremely valuable property right.[18]

66.     Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

67.     It must also be noted there may be a substantial time lag – measured in years -between when harm occurs and when it is discovered, and also between when PII is stolen

---

[17] See IdentityTheft.gov, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Steps.
[18] See, e.g., John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

– 15 –

and when it is used.

68.   According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[19]

69.   PII is such a valuable commodity to identity-thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

70.   There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

71.   Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

72.   PII can sell for as much as $363 per record according to the Infosec Institute.[20] PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of that information and damage to victims may continue for many years.

73.   For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit

---

[19] *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO-07-737, U.S. GOV. ACCOUNTING OFFICE, (2007) https://www.gao.gov/new.items/d07737.pdf.
[20] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, INFOSEC (July 27, 2015),  https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/.

lines.[21] Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[22] Each of these fraudulent activities is difficult to detect. An individual may not know that their social security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

74.     Moreover, it is not an easy task to change or cancel a stolen Social Security number.

75.     An individual cannot obtain a new social security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[23]

76.     This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[24]

77.     Defendant knew or should have known about these dangers and strengthened its data and email handling systems accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet Defendant failed to properly prepare for that risk.

---

[21] *Identity Theft and Your Social Security Number*, SOCIAL SECURITY ADMINISTRATION (2018) at 1, https://www.ssa.gov/pubs/EN-05-10064.pdf.

[22] *Id* at 4.

[23] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft.

[24] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, COMPUTER WORLD (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

**H.      Plaintiff's and Class Members' Damages**

78.      To date, Defendant has done nothing to provide Plaintiff and the Class Members with relief for the damages they have suffered as a result of the Data Breach.

79.      Upon information and belief, Plaintiff's and Class Members' PII, including full names and social security numbers, were compromised in the Data Breach and are now in the hands of the cybercriminals who accessed Defendant's systems maintaining PII. This PII was acquired by unauthorized, unidentified third-party threat actors.

80.      Since being notified of the Data Breach, Plaintiff has spent significant time dealing with the impact of the Data Breach, valuable time that Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation.

81.      Due to the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis trying to mitigate and address harms caused by the Data Breach. This includes changing passwords, cancelling credit and debit cards, and monitoring their accounts for fraudulent activity.

82.      Plaintiff's PII, including Social Security number, name, and date of birth, was compromised as a direct and proximate result of the Data Breach.

83.      As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

84.      As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

85.      Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft because Defendant allowed all the ingredients of identity theft to fall into the hands of cybercriminals.

86.      Plaintiff and Class Members face substantial risk of being targeted for future

phishing, data intrusion, and other illegal schemes based on their PII as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

87.     Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

88.     Plaintiff and Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

89.     Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and sensitive information for misuse.

90.     Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses. Plaintiff's Class Members' valuable time they reasonably incurred to remedy or mitigate the effects of the Data Breach includes:

        a.   reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

        b.   purchasing credit monitoring and identity theft prevention;

        c.   placing "freezes" and "alerts" with reporting agencies;

        d.   spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

        e.   contacting financial institutions and closing or modifying financial accounts;

        f.   closely reviewing and monitoring Social Security numbers, medical insurance accounts, bank accounts, and credit reports for unauthorized

activity for years to come; and,

91.     Moreover, Plaintiff and Class Members have an interest in ensuring that their PII, which is believed to remain in Defendant's possession, is protected from further breaches through the implementation of adequate security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing PII is not accessible online and that access to such data is password protected, that Defendant has sufficient policies and training in place, that all of Defendant's systems are encrypted and protected by multi-factor authentication, and that Defendant's systems are appropriately patched with the latest security updates.

92.     Further, because of Defendant's conduct and failures, Plaintiff and Class Members are forced to live with the stress and anxiety that their PII may be disclosed to the entire world, or at least to even further cybercriminals, thereby subjecting them to embarrassment, further risk of identity theft, and depriving them of the autonomy to decide who has access to the most sensitive and private information, including their financial information and identifying information that they cannot change.

93.     As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered economic harms, anxiety, stress, emotional distress, loss of privacy, and are at an increased risk of future harm.

## CLASS ACTION ALLEGATIONS

94.     Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated ("the Class") pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, and Fed. R. Civ. P. 23(b)(3).

95.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons whose PII was compromised in the Data Breach or
> have otherwise suffered harm because of the Data Breach.

96.     Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal

representatives, attorneys, successors, heirs, and assigns of Defendant. Also excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

97.    Plaintiff reserves the right to amend or modify the Class definitions as this case progresses.

98.    This action satisfies the requirements for a class action under Fed. R. Civ. P. 23(a)(1)-(3) and Fed. R. Civ. P. 23(b)(2), including requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority.

99.    <u>Numerosity</u>. The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of individuals whose sensitive data was compromised in the Data Breach.

100.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.    if Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII;

    b.    if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.    if Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    d.    if Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

    e.    if Defendant owed a duty to Class Members to safeguard their PII;

    f.    if Defendant breached their duty to Class Members to safeguard their PII;

g.   if Defendant knew or should have known that their data security systems and monitoring processes were deficient;

h.   if Defendant should have discovered the Data Breach sooner;

i.   if Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j.   if Defendant's conduct was negligent;

k.   if Defendant's breach implied contracts with Plaintiff and Class Members;

l.   if Defendant were unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members;

m.   if Defendant failed to provide notice of the Data Breach in a timely manner, and;

n.   if Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

101.   <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was compromised in the Data Breach.

102.   <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's Counsel are competent and experienced in litigating class actions.

103.   <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

104.   <u>Superiority</u>. A class action is superior to other available methods for the fair

and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

105.   Class certification is also appropriate under Fed. R. Civ. Proc. 23(b)(2). Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

106.   Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## FIRST CAUSE OF ACTION
### Negligence/Negligence *Per Se*
### (On Behalf of Plaintiff and the Class)

107.   Plaintiff repeats and re-alleges paragraphs 1 through 107 of this Complaint and incorporates them by reference herein.

108.   Plaintiff and the Class entrusted Defendant with their PII on the premise and with the understanding that Defendant would safeguard their information, use their PII for admissions purposes only, and/or not disclose their PII to unauthorized third parties.

109.   Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed.

110.   By collecting and storing this data in their computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard their computer system—and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of their security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

111.   Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the PII.

112.   Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant and individuals who entrusted them with PII, which is recognized by laws and regulations, as well as common law. Defendant was in a superior position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

113.   Defendant's duty to use reasonable security measures required Defendant to reasonably protect confidential data from any intentional or unintentional use or disclosure.

114.   In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

115.   Defendant's duty to use reasonable care in protecting confidential data arose not only because of the statutes and regulations described above, but also because Defendant are bound by industry standards to protect confidential PII.

116.   Defendant breached its duties, and thus was negligent, by failing to use

– 24 –

reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.  failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

b.  failing to adequately monitor the security of their networks and systems;

c.  failing to have in place mitigation policies and procedures;

d.  allowing unauthorized access to Class Members' PII;

e.  failing to detect in a timely manner that Class Members' PII had been compromised; and

f.  failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

117.  Defendant owed to Plaintiff and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the data breach.

118.  In addition to Defendant's common-law duty to notify Plaintiff and Class Members, Arizona's Data Breach Notification Law, A.R.S. §§ 18-551 and 18-552, requires Defendant to notify Plaintiff and the Class Members of the Data Breach within forty-five days. [25]

---

[25] The law provides in relevant part:

If a person that conducts business in this state and that owns, maintains or licenses unencrypted and unredacted computerized personal information becomes aware of a security incident, the person shall conduct an investigation to promptly determine whether there has been a security system breach.

119.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, among other requirements, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; (iii) implement written cybersecurity policies, including sufficient incident response, disaster recovery, and business continuity plans that include lessons learned from this Data Breach; and (iv) to continue to provide adequate credit monitoring to all Class Members.

120.   Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

121.   Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and Class Members' PII.

122.   The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII—whether by malware or otherwise.

123.   PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class Members and the importance of exercising reasonable care in handling it.

124.   Defendant breached its duties by failing to exercise reasonable care in

---

B.  If the investigation results in a determination that there has been a security system breach, the person that owns or licenses the computerized data, within forty-five days after the determination, shall:

1.  Notify the individuals affected pursuant to subsection E of this section and subject to the needs of law enforcement as provided in subsection D of this section.

supervising their agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiff and Class Members—which actually and proximately caused the Data Breach and injured Plaintiff and Class Members.

125.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and Class Members' injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

126.    Defendant's breach of its common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

127.    Plaintiff repeats and re-alleges paragraphs 1 through 107 of this Complaint and incorporates them by reference herein.

128.    Plaintiff and Class Members were required to provide their PII to Defendant as a condition of obtaining services from Defendant. Plaintiff and Class Members provided their PII to Defendant or its third-party agents in exchange for Defendant's services and/or products.

129.    Plaintiff and Class Members reasonably understood that a portion of the

funds they paid Defendant for services would be used to pay for adequate cybersecurity measures.

130.    Plaintiff and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that it was required to provide based on Defendant's duties under state and federal law and its internal policies.

131.    Plaintiff and the Class Members accepted Defendant's offers by disclosing their PII to Defendant or its third-party agents in exchange for services.

132.    In turn, and through internal policies, Defendant agreed to protect and not disclose the PII to unauthorized persons.

133.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their PII.

134.    After all, Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

135.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

136.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

137.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

138.    Defendant materially breached the contracts it entered with Plaintiff and Class Members by:

  a. failing to safeguard their information;

  b. failing to notify them promptly of the intrusion into its computer systems that compromised such information;

  c. failing to comply with industry standards;

  d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

  e. failing to ensure the confidentiality and integrity of the electronic PII that Defendant created, received, maintained, and transmitted.

139. In these and other ways, Defendant violated its duty of good faith and fair dealing.

140. Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed *supra*).

141. On information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

142. Plaintiff and Class Members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

<u>**THIRD CAUSE OF ACTION**</u>
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

143. Plaintiff repeats and re-alleges paragraphs 1 through 107 of this Complaint and incorporates them by reference herein.

144. Plaintiff and Class Members had a legitimate expectation of privacy regarding their PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

145. Defendant owed a duty to Plaintiff and Class Member to keep their PII confidential.

146. The unauthorized disclosure and/or acquisition (*i.e.,* theft) by a third party

of Plaintiff's and Class Members' PII is highly offensive to a reasonable person.

147.    Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' PII constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

148.    Defendant's failure to protect Plaintiff's and Class Members' PII acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

149.    Defendant knowingly did not notify Plaintiff and Class Members in a timely fashion about the Data Breach.

150.    Because Defendant failed to properly safeguard Plaintiff's and Class Members' PII, Defendant was on notice that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

151.    As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

152.    Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII is still maintained by Defendant with their inadequate cybersecurity system and policies.

153.    Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

154.    Plaintiff, on behalf of themselves and Class Members, seek injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' PII.

155.    Plaintiff, on behalf of themselves and Class Members, seek compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

156.    Plaintiff repeats and re-alleges paragraphs 1 through 107 of this Complaint and incorporates them by reference herein.

157.    This count is pleaded in the alternative to breach of implied contract.

158.    Plaintiff and Class Members conferred a benefit, including their valuable PII, on Defendant in connection with their purchase of services from Defendant. In so conferring this benefit, Plaintiff and Class Members understood that part of the benefit Defendant derived from the PII would be applied to data security efforts to safeguard the PII.

159.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

160.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

161.    Under the principle of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

162.    Defendant acquired the monetary benefit and PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

163.    If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant.

164.    Plaintiff and Class Members have no adequate remedy at law.

165.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures as long as Defendant fails to undertake appropriate and adequate measures to protect PII in their continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the impact of the PII comprised as a result of the Data Breach for the reminder of the lives of Plaintiff and Class Members.

166.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

167.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

### FIFTH CAUSE OF ACTION
**Declaratory Judgment and Injunctive Relief**
**(On Behalf of Plaintiff and the Class)**

168.    Plaintiff repeats and re-alleges paragraphs 1 through 107 of this Complaint and incorporates them by reference herein.

169.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious, and which violate the terms of the federal and state statutes described above.

170.    An actual controversy has arisen in the wake of the Data Breach at issue regarding Defendant's common law and other duties to act reasonably with respect to employing reasonable data security. Plaintiff alleges Defendant's actions in this respect were inadequate and unreasonable and, upon information and belief, remain inadequate and unreasonable. Additionally, Plaintiff and the Class continue to suffer injury due to the continued and ongoing threat of new or additional fraud against them or on their accounts using the stolen data.

171.    Under its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

      a.    Defendant owed, and continues to owe, a legal duty to employ reasonable data security to secure the PII it possesses, and to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTCA;

      b.    Defendant breached, and continues to breach, its duty by failing to employ reasonable measures to secure its customers' personal and financial information; and

      c.    Defendant's breach of its legal duty continues to cause harm to Plaintiff and the Class.

172.    The Court should also issue corresponding injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect its prospective, current and/or former consumers' (i.e., Plaintiff's and the Class') data.

173.   If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of Defendant's data systems. If another breach of Defendant's data systems occurs, Plaintiff and the Class will not have an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted to compensate Plaintiff and the Class for their out-of-pocket and other damages that are legally quantifiable and provable, do not cover the full extent of injuries suffered by Plaintiff and the Class, which include monetary damages that are not legally quantifiable or provable.

174.   The hardship to Plaintiff and the Class if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued.

175.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the injuries that would result to Plaintiff, the Class, and the public at large.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, request judgment against Defendant and that the Court grant the following:

A. For an Order certifying the Class, and appointing Plaintiff and her Counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order;

1.   prohibiting Defendant from engaging in the wrongful and unlawful acts

described herein;

2.   requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

3.   requiring Defendant to delete, destroy, and purge the PII of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

4.   requiring Defendant to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII for Plaintiff's and Class Members' respective lifetimes;

5.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

6.   prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

7.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

8.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

9.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

10. requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

11. requiring Defendant to conduct regular database scanning and securing checks;

12. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

13. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

14. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

15. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

16. requiring Defendant to meaningfully educate all Class Members about the

threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves; and

17.  requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

18.  For an award of damages, including actual, nominal, consequential, and punitive damages, as allowed by law in an amount to be determined;

19.  For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

20.  For prejudgment interest on all amounts awarded; and

21.  Such other and further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands that this matter be tried before a jury.

RESPECTFULLY SUBMITTED this 10th day of October 2024.

O'STEEN & HARRISON, PLC

_____
Lincoln Combs

STRANCH, JENNINGS & GARVEY, PLLC
J. Gerard Stranch, IV *(pro hac vice pending)*
Grayson Wells  *(pro hac vice pending)*

*Attorneys for Plaintiff and the Proposed Class*

# EXHIBIT "A"



**Constar**
**Financial Services**

Secure Processing Center
P.O. Box 3826
Suwanee, GA 30024



8 1 2138 ******************AUTO**MIXED AADC 302
Pennie Nicole Roller

ımı|lımlımlıhlımlılılılılılımlılılılımılılılımıll

September 27, 2024

Dear Pennie Nicole Roller:

Empereon Constar is writing to inform you of a recent data security event which may involve some of your information. We are providing you with information regarding the event, our response, and steps you may take to better protect against the possibility of identity theft and fraud, should you determine it is appropriate to do so.

**What Happened?** On July 22, 2024, we became aware that certain computer systems in our Empereon corporate computer environment exhibited evidence of unauthorized access. We promptly took steps to secure our systems and launched an investigation with the assistance of cyber incident response specialists to determine the full nature and scope of the event. We also promptly reported the event to federal law enforcement. Through our investigation, we determined that an unauthorized actor had access to an archived data set containing a limited number of files and employee information. Therefore, out of caution, we conducted a comprehensive review of the information within the impacted files to identify the personal information contained therein and to whom that information related. We recently concluded our review.

**What Information Was Involved?** We determined that your name, and date of birth and Social Security number were present in the impacted data set. Although there is no indication of identity theft or fraud resulting from this event, we are providing this precautionary notice.

**What We Are Doing.** We take the privacy and security of the information in our care very seriously. Upon learning of the event, we immediately took steps to secure our systems and conducted an investigation to confirm the nature and scope of the activity and determine who may be affected. Additionally, while we have safeguards in place to protect data in our care, we are working to review and further enhance these protections as part of our ongoing commitment to data security. We also reported this event to federal law enforcement and government regulators.

As an added precaution, we are offering you twelve (12) months of credit monitoring and identity restoration services at no cost to you through Equifax. Enrollment instructions are enclosed with this letter.

**What You Can Do.** We encourage you to remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors over the next 12 to 24 months. Any suspected incidents should be promptly reported to the appropriate financial institution and law enforcement. Please review the enclosed document, *Steps You Can Take to Help Protect Personal Information*, which contains information on what you can do to safeguard against possible misuse of information. You may also enroll in the free credit monitoring services we are offering to you.